# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CLIFTON L. HITE,

      Plaintiff,

v.                                          Civ. No. 19-116 GJF

ANDREW SAUL, *Commissioner of*
*Social Security*,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Clifton L. Hite's ("Plaintiff's") "Motion to Reverse and Remand for Rehearing, with Supporting Memorandum" [ECF 15] ("Motion").[2] The Motion is fully briefed. *See* ECFs 17 (Commissioner's Response), 18 (Reply). Having meticulously reviewed the entire record, the parties' briefing, and having conducted oral argument, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling and the Appeals Counsel's ("AC") decision to decline review of additional evidence should be **AFFIRMED** on all grounds. Therefore, and for the reasons articulated below, the Court will **DENY** the Motion.

## I.   BACKGROUND

Plaintiff was born in 1959. Administrative Record ("AR") 24, 108.[3] He graduated high school, and as of April 2018, lived with his wife. AR 288, 65-66. In July 2014, he resigned from

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. Consequently, Mr. Saul has been "automatically substituted as a party." FED R. CIV. P. 25(d). Furthermore, because "[l]ater proceedings should be in [his] name," the Court has changed the caption of this case accordingly. *Id.*; *see also* 42 U.S.C. § 405(g) (stating that such an action "survive[s] notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[2] The Court notes that Plaintiff's Motion—twenty-nine (29) pages in length—violates D.N.M.LR-Civ. 7.5. Counsel is cautioned against doing so in the future without obtaining the Court's advance permission.

[3] The Court utilizes the black pagination located on the bottom right of the AR for its citations.

his full-time job as a commercial truck driver due to fatigue and has not been employed since. AR 77. In September 2014, he applied for social security disability benefits, claiming a disability onset date in February 2014. AR 250, 256. He asserted impairments associated with diabetes, cholesterol, and a learning disability. AR 105.

In September 2015, the Social Security Administration (SSA) denied Plaintiff's claim, concluding that he had no severe limitations. AR 185-89. In May 2016, the SSA denied his request for reconsideration. AR 194, 198. Plaintiff requested a hearing, which was held in August 2017 before ALJ Eric Weiss. AR 71, 168. Assisted by counsel, Plaintiff testified at the hearing, as did Sandra Trost, an impartial vocational expert. AR 168. In February 2018, "after careful consideration of all the evidence," the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act. *Id*. at 168-79.

Shortly after the ALJ issued his decision, Plaintiff's counsel closed his legal practice due to medical issues and ended his representation of Plaintiff. AR 70. The withdrawal letter advised Plaintiff of the sixty-day appeal deadline and that he should "consult with another attorney or representative about [his] claim and the possibility of an appeal of the [ALJ's] decision to the SSA Appeals Counsel." *Id*. Consequently, Plaintiff retained Michael Armstrong, Esq., to pursue his appeal. *Id*. at 67-68; *see also* Mot. 3 n.3 (counsel representing that her firm began representation of Plaintiff on March 15, 2018, five weeks after the ALJ filed his decision).

Through new counsel, Plaintiff sought relief at the SSA's AC in May 2018. AR 249. In doing so, Plaintiff submitted five additional pieces of evidence—all of which postdated the ALJ's written decision.[4] In December 2018, the AC found, among other things, no abuse of discretion

---

[4] *See* AR 12 (Treating Source Statement from Rebecca Wittenburg, CNP, dated April 5, 2018), 15-16 (Treating Source Statement from Marie Mugavin, Ph.D., CNP, dated May 23, 2018), 24-34 (Psychological Evaluation conducted by Eligio Padilla, Ph.D., dated April 2, 2018), 44-50 (Consultative and Examination/Impairment Rating by John R. Vigil, MD), 65-66 (third-party statement from Tina Hite dated April 5, 2018).

by the ALJ, no error of law, and no lack of substantial evidence. AR 1. Moreover, the AC determined that this additional evidence did not "relate[] to the period at issue." *Id* at 2. Consequently, the AC held that the proffered evidence did not "affect the [ALJ's] decision about whether [Plaintiff] [was] disabled beginning on or before February 7, 2018." *Id*. It therefore denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. *Id*. at 1-5. Plaintiff timely petitioned this Court for relief in February 2019, alleging that the ALJ's decision was "erroneous as a matter of law and regulation." Compl. 2, ECF 1. After Plaintiff's Motion to Remand was full briefed, the Court entertained extensive oral argument on the merits. *See* ECF 23 (transcript of hearing held January 15, 2020).

## II. PLAINTIFF'S CLAIMS

Plaintiff advances two claims, each attacking a different stage in the administrative process. Plaintiff first argues that the AC erroneously declined to consider the additional evidence submitted after the ALJ issued his decision. Mot. 14, *et seq*. According to Plaintiff, the additional evidence was "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Id*. (quoting 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5)). He further argues that good cause existed for submitting this evidence for the first time before the AC and not the ALJ. *Id*. For his second claim, Plaintiff contends that ALJ Weiss failed to include in the "residual functional capacity" ("RFC") all of the moderate limitations assessed by Michael Emery, Ph.D., an examining consultative psychologist. Mot. 24, *et seq*. This failure, according to Plaintiff, necessitates a remand of this case so that the RFC can be properly crafted.

# III. ANALYSIS

As explained below, the Court concludes that the AC properly declined to review Plaintiff's additional evidence, although for a different reason than the one cited by the AC. The Court further concludes that the ALJ did not err in reconciling Plaintiff's RFC with the limitations identified by Dr. Emery.

## A. THE APPEALS COUNCIL DID NOT ERR IN REFUSING TO CONSIDER PLAINTIFF'S ADDITIONAL EVIDENCE

### 1. Standard of Review

The determination of whether evidence qualifies for consideration by the AC is a question of law reviewed *de novo*. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)); *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("Whether [evidence] qualifies as new, material and chronologically relevant is a question of law subject to our *de novo* review" (quoting *Wilson v. Apfel*, 215 F.3d 1338 (10th Cir. 2000) (unpublished table decision))). The AC will only consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) & 416.1470(a)(5). In addition, the Plaintiff must show "good cause" for not submitting the additional evidence for the ALJ's consideration. 20 C.F.R. §§ 404.970(b) & 416.1470(b).[5]

Evidence is new if it is not "duplicative or cumulative." *Threet*, 353 F.3d at 1191. Evidence is material if there is a "*reasonable probability* that the additional evidence would change

---

[5] The "good cause" requirement was added via amendment effective January 17, 2017, with compliance with the amended rule required by May 1, 2017. *See* 81 Fed. Reg. 90,987 (Dec. 16, 2016). Consequently, this new standard applies to the instant case because both the ALJ's decision and the AC's denial of review occurred in 2018.

the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (emphasis added).[6] And, as the rule itself implies, evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ, i.e., the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004).

Lastly, with respect to the new requirement that a claimant show good cause for his delay in waiting to submit new evidence to the AC, the regulations list several examples of circumstances that may justify such a finding:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause;

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or

(v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. §§ 404.970(b) & 416.1470(b).

---

[6] The previous materiality standard required "a reasonable *possibility* that [the additional evidence] would have changed the outcome," *see Threet*, 353 F.3d at 1191 (emphasis added), but this standard was changed to the current "probability" test in the same amendment discussed in note 5 *supra*.

As Plaintiff's counsel conceded at oral argument, Plaintiff bears the burden to show that each of the four criteria are present.  *See* Tr. 4:5-5:25.

### 2.  Timeline of Key Events

In conducting its *de novo* review of whether Plaintiff made an adequate showing that good cause excused his failure to submit the additional evidence earlier, the Court has constructed the following timeline of important events:

**February 7, 2018**:  ALJ issued his written decision.  AR 165.

**February 22, 2018**:  Plaintiff's first counsel sent letter to Plaintiff advising of outcome of claim, Plaintiff's appellate rights, and counsel's withdrawal from representation.  AR 70.

**March 15, 2018**:  Plaintiff retained new counsel to file appeal.  AR 68 (appointment of Michael Armstrong, Esq.); *see also* 62 (notice of appearance dated April 9, 2018).

**March 23, 2018**:  Plaintiff was evaluated for first time by John R. Vigil, M.D.  AR 44-50.

**April 2, 2018**:  Plaintiff was evaluated for first time by Eligio Padilla, Ph.D.  AR 24-34.

**April 5, 2018**:  Plaintiff's wife authored third-party statement.  AR 65-66.

**April 21, 2018**:  AC—in letter addressed to Plaintiff's first counsel—granted extension of time and notified Plaintiff of burden to demonstrate good cause regarding submission of additional evidence ("*[y]ou must show good cause for why you missed informing us about or submitting it earlier*").  AR 56 (emphasis added).

**May 9, 2018**:  AC—in second letter this time addressed to Mr. Armstrong—again granted extension of time and again reminded Plaintiff of his burden to demonstrate good cause regarding submission of additional evidence.  AR 17.

**May 9, 2018**:  Mr. Armstrong submitted first three pieces of additional evidence to AC (Dr. Vigil's report dated April 24, 2018, Dr. Padilla's report dated May 7, 2018, and Mrs. Hite's statement), all without explanation for the delay.  *See* AR 23, 43, 64.

**May 24, 2018**:  Marie Mugavin, Ph.D., CNP, issued statements concurring with findings and conclusions made by Drs. Vigil and Padilla.  AR 15, 16.

**May 25, 2018**: Mr. Armstrong submitted fourth piece of additional evidence to AC (Dr. Mugavin's statements), again without explanation for delay. AR 14.

**May 29, 2018**: Rebecca Wittenburg, CNP, issued statement concurring with findings and conclusions made by Dr. Vigil. AR 12.

**June 7, 2018**: Mr. Armstrong submitted fifth piece of additional evidence to AC (CNP Wittenburg's statement), again without explanation for delay. AR 11.

**December 13, 2018**: AC denied Plaintiff's request for review. AR 1-4.

### 3. Plaintiff Failed to Establish Good Cause

Plaintiff advances alternative theories as to why he met the good cause requirement or should be excused from doing so. Plaintiff first argues that—because the AC excluded the additional evidence only under the "chronologically pertinent" prong without discussing the good cause requirement—any argument now advanced by the Commissioner relating to whether Plaintiff had good cause would be a *post hoc* rationalization. Mot. 17. Therefore, in Plaintiff's view, that argument has now been "essentially waived" by the SSA. *Id.* In addition, Plaintiff asserts that—even if this Court were to hold that the issue has not been waived—he nonetheless has good cause for belatedly submitting the additional evidence before the AC because of an "unusual, unexpected, or unavoidable circumstance beyond [his] control . . . ." *Id.* (quoting 20 C.F.R. §§ 404.970(b)(3) & 416.1470(b)(3)). According to Plaintiff, because his first attorney ceased his representation *after* the ALJ's decision but *before* the AC's determination, his new attorney had an affirmative duty to provide evidence "at any stage of the administrative decision-making process." *Id.* at 18 (quoting POMS GN 03970.010(B)(2)). Lastly, Plaintiff maintains that the additional evidence did not yet exist when this case was at the hearing level and that the evidence therefore could not have been submitted any sooner. *Id.*

The Commissioner, on the other hand, contends that Plaintiff has not met his burden of establishing good cause.  Resp. 23 n.3.  The Commissioner argues that—despite being informed in writing by the AC of his burden to demonstrate good cause for submitting the additional material—Plaintiff nonetheless completely failed to do so with respect to each of the five additional pieces of evidence.  *Id*.  Specifically, the Commissioner asserts that the obligation to establish good cause applies *at the time of submission* of the additional evidence to the agency.  *Id*. (citing 20 C.F.R. §§ 404.935 & 404.970(a)(5)).  On that score, according to the Commissioner, Plaintiff completely whiffed because his submission was entirely silent on good cause.  Lastly, the Commissioner argues that Plaintiff's change in counsel after the ALJ's decision does not qualify as good cause under 20 C.F.R. §§ 404.970(b)(3) and 416.1470(b)(3) because there is no evidence that his first attorney intended to submit this evidence but was unable to do so because of illness or death.  *Id*.  Rather, the Commissioner emphasizes that Plaintiff's new counsel was simply deploying a different and more robust litigation strategy when he referred Plaintiff to additional experts, which in the Commissioner's estimation falls well short of the good cause standard.

At oral argument, Plaintiff's counsel conceded that none of the letters accompanying the additional evidence even attempted to demonstrate good cause.  Tr. 8:8-16.  Nonetheless, Plaintiff maintained that this failure was harmless because the AC itself skipped past the good cause inquiry and addressed the "new," "material," and "chronologically pertinent" requirements.  Tr. 8:21-9:2. Plaintiff also emphasized that, because the AC did not opine on the good cause requirement, this Court cannot address the issue, Tr. 11:5-14, even while performing *de novo* review.  Tr. 15:13-16:3.

It is true, as Plaintiff correctly notes, that the AC's denial of review did not feature any finding as to whether he showed good cause for submitting the additional evidence after the ALJ's

decision.  *See* AR 2.  Contrary to Plaintiff's position, however, this omission does not bar this Court from now addressing the issue.  After all, as Plaintiff's counsel conceded, Tr. 3:13-20, the task of applying *de novo* review relieves this Court of any obligation to pay deference to the tribunal below.  In this Court's *de novo* review, it matters not whether the AC made a finding or expressed any opinion whatsoever on the good cause requirement.  In other words, whether the AC was right, wrong, or silent on the good cause question is irrelevant because this Court is required to take a fresh look at that question altogether unburdened by what the AC thought about it.  Thus, the Court rejects Plaintiff's invitation to constrain its review only to the criterion or criteria actually addressed by the AC.  Whatever such a contrived standard of review would be called, it is most certainly not the *de novo* review the Court is required by Tenth Circuit precedent to apply.

In his briefing and again at oral argument, Plaintiff urged this Court to rely on seven earlier decisions by other magistrate judges in this district in which good cause in this context was at least potentially at issue.  *See* Mot. 15-17, Reply 1-2, and Tr. 11-13.  But these cases stop well short of offering Plaintiff the persuasiveness he attributes to them.  In four of them, the Commissioner did not dispute before the district court whether the plaintiff had shown the good cause necessary to require the AC to consider the additional evidence.  *See Bisbee v. Berryhill*, CV 18-731 SMV, 2019 WL 1129459, at *5 n.6 (D.N.M. Mar. 12, 2019) (declining to address good cause because "the [AC] did not exclude the report because Plaintiff lacked good cause, *and the Commissioner does not dispute that good cause exists here*.") (emphasis added); *Copelin v. Saul*, No. CV 18-727 KK, 2019 WL 4739536, at *7 n.17 (D.N.M. Sept. 27, 2019) (declining to address good cause because *neither the AC nor the Commissioner contended* that the plaintiff failed to satisfy the requirement); *Arellano v. Saul*, No. CV 18-600 KK, 2019 WL 4016280, at *6 n.8 (D.N.M. Aug.

26, 2019) (declining to address good cause because neither "*the record nor the parties' arguments on appeal*" make reference to the requirement) (emphasis added); *Lean v. Saul*, No. CV 18-505 SCY, 2019 WL 3457830, at \*20-21 (no discussion of presence or absence of good cause because issue not raised in the briefing). In a fifth case, *Kiro v. Berryhill*, No. CV 18-89 SCY, 2019 WL 1331903, at \*6 (D.N.M. Mar. 25, 2019), the Commissioner *did* dispute whether Plaintiff had shown good cause [ECF 18 at 16], but the decision merely acknowledged the good cause requirement without otherwise addressing it. And the last two citations to which Plaintiff has referred this Court are perplexing, for neither *Holder v. Berryhill,* No. CV 17-1206 LF, 2019 WL 2716758 (D.N.M. June 28, 2019)) nor *Casias v. Saul*, No. CV 18-537 LF, 2019 WL 4013890, at \*6 (D.N.M. Aug. 26, 2019)) included *any* discussion whatsoever of good cause under § 404.970(a)(5).[7] It is enough to say that, unlike these other cases, the instant case features a Commissioner disputing whether Plaintiff showed good cause at the time he submitted additional evidence to the AC, *see* Rsp. 23 n.3, *and* a Court willing to decide the issue under *de novo* review.

At bottom, the fundamental problem with Plaintiff's primary good cause argument is that (1) he was required to demonstrate good cause *at the time* of his submission(s) to the AC, and (2) he concedes that he *never even attempted* to show good cause at all. At the risk of belaboring the obvious, the Court observes that one cannot demonstrate good cause by showing no cause at all. But Plaintiff essentially urges the Court to ignore all of this and to conclude that the AC *implicitly* found good cause because it went on to consider another of the criteria involved in the good cause analysis. *See* Tr. 5:13-15; 7:17-8:7. There is no way that can be true, however, because Plaintiff has admitted that he offered no cause at all – good or otherwise. *See* Tr. 8:13-16. So there would have been no evidentiary basis for the AC to make a finding – implicitly or explicitly – that Plaintiff

---

[7] Plaintiff also cited an Eleventh Circuit case but admitted that its good cause issue was left "for another day." Tr. 14:9-19 (quoting *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 843 n.6 (11th Cir. 2019) (unpublished)).

had shown good cause for the late submission of evidence. And *had* the AC actually found good cause on this record, this Court exercising *de novo* review would have reversed it (assuming that the Commissioner preserved the issue in its briefing).

Before leaving this discussion, the Court will address Plaintiff's alternative argument that he actually *does have* good cause to excuse his failure to offer the additional evidence earlier in the administrative proceeding. In essence, Plaintiff contends that (1) his original counsel was ill with cancer and ultimately ended his representation of Plaintiff after the ALJ's decision (and died a year later); (2) new counsel had an affirmative obligation to develop the record, which may include new examinations, reports, and other evidence; and (3) new counsel submitted the additional evidence very soon after receiving it himself. Plaintiff asserts that this sequence of events amounts to good cause because it is an example of an "unusual, unexpected, or unavoidable circumstance beyond [his] control." Mot. 17 (citing 20 C.F.R. § 404.970(b)(3)). For the following reasons, the Court disagrees.

First, there is no precedent that permits a Social Security claimant under § 404.970(b) to attempt to show good cause at any time *other than* when the additional evidence is submitted to the AC. That regulation makes it clear that good cause must be shown at that time: "The Appeals Council will only consider additional evidence under. . .this section *if you show good cause* for not informing us about or submitting the evidence [to the ALJ] as described in § 404.935[.]" 20 C.F.R. § 970(b). A plain reading of that regulatory language reveals that the good cause must *accompany* the submission of the additional evidence. Here, that did not happen. Plaintiff's counsel has candidly conceded that her former colleague failed even to attempt to show good cause at the time he submitted additional evidence to the AC.

Second, the facts that Plaintiff now belatedly proffers as good cause are altogether different in kind than the examples listed in the regulation, which are:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>
> (ii) There was a death or serious illness in your immediate family;
>
> (iii) Important records were destroyed or damaged by fire or other accidental cause;
>
> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
>
> (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. §§ 404.970(b) & 416.1470(b) (emphasis added).

In briefing and at oral argument, Plaintiff's counsel invoked only subsection (3) and its recognition of an "unusual, unexpected, or unavoidable circumstance beyond [Plaintiff's] control." *See* Mot. 17, Reply 1, Tr. 19-22. Although that subsection provides a non-exhaustive list of examples of such a circumstance, the examples it does give are worlds apart from the circumstances in this case. Reduced to its bare essence, the alleged good cause in this case stems from Plaintiff retaining a different law firm to pursue his appeal, which resulted in him being sent to different evaluators so that a stronger and more robust case could be made on his behalf.[8]

---

[8] There was no evidence presented and no argument made that Plaintiff's first counsel ever intended to, planned to, or even contemplated sending Plaintiff to additional experts to buttress his disability case. Nor was there evidence

Whatever the result of that newly-repackaged disability application might have been had it been the one originally presented to the ALJ is quite beside the point. So is any discussion about whether the AC would have considered the additional evidence under the regulation that applied prior to May 2017. What matters now is that "a new lawyer with a different litigation strategy" does not constitute good cause under the amended § 404.970(b). Indeed, deterring this second-bite-at-the-apple approach is no doubt why the regulation was amended to add the good cause requirement.[9] Were the Court to agree that this fact pattern constitutes good cause, the Court's message to disability applicants would effectively be: don't be overly concerned about the evidentiary presentation you make before the ALJ because – if your claim is denied – you can still retain new counsel, submit to a battery of new tests with different evaluators, send that additional evidence to the AC without attempting to show good cause for the delay, and then wait a year or so before debuting your good cause argument on appeal in a U.S. District Court. Absent binding precedent to the contrary, this Court is unwilling to endorse such a message.

In summary, the AC is only required to consider qualifying evidence. *Krauser*, 638 F.3d at 1328 ("If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review"). The "general rule of de novo review permits [a court] to resolve the matter and remand if the Appeals Council erroneously rejected the evidence" as not qualifying. *Id.* (citing *Chambers*, 389 F.3d at 1142). Here, the additional evidence does not qualify under 20 C.F.R. §§ 404.970 and 416.1470 because Plaintiff did not establish good cause to excuse his failure to submit the additional evidence earlier in the administrative process. Therefore, remand to the

---

presented or argument made that Plaintiff's first counsel failed to follow through on any such plan because of his illness.

[9] At oral argument, Plaintiff's counsel agreed that a mere change of counsel was "probably not" sufficient to constitute good cause in this context. Tr. 19. She also conceded that she could not find any authority for the proposition that "ineffective assistance of counsel" could constitute good cause in this context. Tr. 22.

AC would be inappropriate on this issue and is therefore denied.  *See Threet*, 353 F.3d 1185, 1191 (10th Cir. 2003).[10]

## B.  THE ALJ'S RFC DETERMINATION WAS LEGALLY SOUND

Plaintiff's final claim is a narrow one:  he alleges that the ALJ failed to adequately incorporate into the RFC certain moderate limitations in Plaintiff's ability to sustain attention, concentration, persistence, and pace at an acceptable level.  These moderate limitations were identified during a consultative psychological examination performed in May 2015 by Michael Emery, Ph.D., a state agency examining psychologist.  Mot. 1.  For the following reasons, the Court discerns no legal error by the ALJ and further finds the RFC to be supported by substantial evidence.

### 1.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[11]  The Court's review of that decision is both legal and factual.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing  *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of

[10] Because of its decision on the requisite showing of good cause, the Court does not decide whether the additional evidence was also new, material, and chronologically pertinent.

[11] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981; *see O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the

matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### 2. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[he] is not presently engaged in substantial gainful activity," (2) that "[he] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents [him] from performing [his] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claim advances past step four, the burden then shifts to the Commissioner to show that the claimant retains sufficient RFC "to perform other work in the national economy in view of [his] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

### 3. The ALJ's Decision

At step one, ALJ Weiss found that Plaintiff had engaged in substantial gainful activity. Nonetheless, ALJ Weiss gave Plaintiff the "benefit of the doubt" and did not deny him at this step.[12]  At step two, ALJ Weiss found that Plaintiff had the following severe impairments: learning disability, avoidant personality disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD) and moderate major depressive disorder.  AR 171.  At step three, ALJ Weiss determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 172.

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[13]  ALJ Weiss determined that Plaintiff's RFC allowed for him to perform a full range of work at all exertional levels with the following non-exertional limitations:

> The claimant must avoid climbing of ladders, ropes, and scaffolds, and must avoid more than occasional exposure to unprotected heights, and dangerous moving machinery. The claimant is able to understand, remember, and carry out simple instructions and make commensurate work related [sic] decisions in a work setting with few changes. He is able to interact occasionally with supervisors, coworkers, and the public. The claimant is able to maintain concentration, persistence, and pace for two hours at a time during the workday with normal breaks.

AR 174.  To arrive at this RFC, ALJ Weiss considered Plaintiff's alleged learning disability, symptoms of fatigue, and difficulty maintaining focus.  *Id.*  ALJ Weiss found, after careful review

---

[12] The ALJ noted that although Plaintiff's alleged onset date was in February 2014, Plaintiff "earned $9,069 in 2014" and "testif[ied] that he ceased working in July 2014."  *Id.* (citing AR 280-81, containing a printout of Plaintiff's annual earnings).  Nevertheless, because "his earnings reports [did] not *show* earnings after the alleged onset date," the ALJ gave him the benefit of the doubt.  *Id.* (emphasis added).

[13] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

of the evidence, that Plaintiff's representations concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 175.

Given the RFC described above, the ALJ found at step four that Plaintiff was "unable to perform past relevant work."  AR 177.  Nonetheless, the ALJ concluded that—when "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity"—jobs existed "in significant numbers in the national economy that the [Plaintiff] c[ould] perform."  *Id.* at 177-78.  These jobs included a hand packager, a hospital cleaner, and a laundry worker II.  *Id.* at 178.  Consequently, the ALJ held that the Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from February 14, 2014, through the date of [his] decision."  *Id.*

### 4.  Parties' Arguments

Plaintiff argues that ALJ Weiss failed to meaningfully incorporate into the RFC the moderate impairments assessed by Dr. Emery relating to Plaintiff's ability to maintain attention, concentration, persistence, and pace.  Plaintiff contends that the ALJ essentially ignored these moderate impairments, despite ostensibly giving them "significant weight."  Mot. 25.  Although the RFC limited Plaintiff to simple and unskilled work in a setting with few changes, limited Plaintiff to only occasional interactions with supervisors, coworkers, and the public, and provided that Plaintiff was able to maintain concentration, persistence, and pace for two hours at a time during the workday with normal breaks, Plaintiff nonetheless insists that the RFC disregarded his moderate limitations to: (1) maintain attention and concentration for extended periods of time; (2) sustain ordinary routine without supervision; (3) work in coordination or proximity to others without being distracted by them; and (4) complete a normal workday and workweek without

interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 26. Plaintiff invokes *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) to support his argument that ALJ Weiss improperly "picked and chose" which moderate limitations to rely on without explaining why he rejected others. *Id*. at 24-25. Plaintiff insists that "the existence of a moderate impairment is not the same as no impairment at all." *Id*. at 27 (quoting *Bowers v. Astrue*, 555 F. Supp. 2d 1241 (D. Colo. 2008)). Consequently, according to Plaintiff, the ALJ erred in crafting an RFC that transformed the moderate limitations found by Dr. Emery into no limitations at all.

The Commissioner, however, argues that Plaintiff misreads the ALJ's decision. The Commissioner asserts that ALJ Weiss gave Dr. Emery's opinion "partial weight" overall only "because he did not agree with Dr. Emery's opinion that Plaintiff had no impairment in understanding." Resp. 16 (citing AR 176). But as to the moderate limitations found by Dr. Emery of which Plaintiff is now complaining, the Commissioner points out that the ALJ actually gave them significant weight. *Id*. The Commissioner argues further that an ALJ does not need to discuss or include every "moderate" limitation in his/her decision as long as that limitation is reflected with concrete restrictions in the RFC. *Id*. at 17. According to the Commissioner, the ALJ's RFC adequately reflects the four moderate limitations even if not otherwise specifically mentioned in his opinion. *Id*.

### 5. Analysis

Because of its centrality to Plaintiff's argument, the Court will quote in full ALJ Weiss's opinion concerning Dr. Emery's assessment:

> As for the opinion evidence, the opinion of Dr. Emery is given partial weight. Dr. Emery's opinions that the claimant's [sic] would have difficulty learning a less physically dependent means of earning a living, difficulty learning a livelihood that required regular interpersonal contact, that the claimant's memory for simple

material was not impaired, that adaptation was moderately impaired, that social functioning was moderately impaired, and that sustained attention and concentration was [sic] moderately impaired, as were pace and persistence are given significant weight (Exhibit 3F/3). This is consistent with the claimant's WAIS-V [sic] testing, which showed a full scale IQ of 90, in the low average range, alongside categories of verbal comprehension, perceptual reasoning, working memory, and processing speed scores, which ranged from average to low average (Exhibit 3F/3), and evidence of a mildly dysthymic and anxious mood (Exhibits 10F/10-22; 15F/4-5, 6, 8, 10, 12, 16-17, 20). However, Dr. Emery's opinion that the claimant's understanding was not impaired is given little weight for the above reasons (Exhibit 3F/3).

AR 176.

To begin, this Court disagrees that the ALJ violated the "pick and choose" rule. In *Haga*, the ALJ "picked" evidence favorable to a finding of nondisability and disregarded uncontroverted evidence favorable to the plaintiff. 482 F.3d at 1208. There, the ALJ accepted the claimant's testimony that she could "work two to six hours per day as caretaker for her mother" but inexplicably rejected certain moderate restrictions imposed by a consulting mental health professional who found limitations in the claimant's ability to deal appropriately with supervisors and coworkers and respond appropriately to workplace pressures and changes. *Id.* This "picking and choosing" was clearly demonstrated in the ALJ's RFC, which provided that the claimant had the "capacity for work activity on a regular and continuing basis, that is, 8 hours a day, for 5 days a week, or an equivalent work schedule and to respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting." *Id.* (internal quotations and citations omitted). Notably, the RFC failed to reflect any limitation on the claimant's "ability to deal appropriately with supervisors and coworkers and respond appropriately to workplace pressures and changes." *Id.* Thus, the ALJ "picked" evidence unfavorable to the plaintiff, i.e., ability to work as caretaker for her mother, while "choosing"—without explanation—to disregard favorable evidence, i.e., rejecting the mental workplace limitations. *Id.* (stating that "[a]n ALJ is not entitled

to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

More recent decisions of the Tenth Circuit have clarified and limited the application of *Haga*. First, in 2015, the Tenth Circuit held it is not always necessary for the ALJ to make specific limitations in the RFC for concentration, persistence and pace. *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015). In *Vigil*, the Tenth Circuit concluded that the ALJ adequately accounted for moderate limitations in concentration, persistence and pace by limiting the plaintiff to simple and unskilled work. *Id.* The plaintiff in *Vigil* had impaired delayed recall, inability to spell in reverse, and could not recall the President's name, leading the ALJ to conclude that the plaintiff "could not be expected to perform complex tasks." *Id.* at 1203. *Vigil* noted that unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. *Id.* at 1204 (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

In 2016, the Tenth Circuit ratified *Vigil*'s holding that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith*, 821 F.3d at 1269 (citing *Vigil*, 805 F.3d at 1204). In *Smith*, the Tenth Circuit reviewed an ALJ's RFC that was based on a non-examining physician's assessment of nine moderate non-exertional limitations. *Id.* at 1268. These nine limitations were: (1) maintaining concentration, persistence, and pace; (2) remaining attentive and keep concentration for extended periods; (3) working with others without getting distracted; (4) completing a normal workday and workweek without interruption for psychologically based systems; (5) performing at a consistent pace without

excessive rest periods; (6) accepting instructions and respond appropriately to criticism by supervisors; (7) getting along with coworkers or peers without distracting them or engaging in behavioral extremes; (8) responding appropriately to changes in the workplace; and (9) setting realistic goals or engaging in independent planning.  *Id.*  In her RFC narrative, the non-examining physician omitted the majority of the nine limitations and recommended instead that the claimant "could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged."  *Id.*  The ALJ adopted the recommendation and found that the claimant "(1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks."  *Id.* at 1269.  "Through these findings," the Tenth Circuit held, "the [ALJ] incorporated the functional limitations of [the claimant's] moderate nonexertional limitations."  *Id.*  Smith reasoned that the "notations of moderate limitations served only to aid [the physician's] assessment of residual functional capacity."  *Id.* at 1269, n.2.  Correspondingly, the Tenth Circuit explained that the court's function is not to compare the ALJ's findings to a physician's "notations of moderate limitations," but rather to compare the ALJ's findings to the physician's opinion.  *Id.*

Here, the ALJ complied with *Haga* and its progeny.  To begin, as a factual matter, the RFC *on its face* accounted for all of the alleged disregarded limitations.[14]  ALJ Weiss did not simply "pick and choose" the evidence that was favorable to a nondisability determination—but rather appropriately considered and weighed all the evidence, including Dr. Emery's opinion, to which he gave "partial weight" overall, specifically by discounting certain portions and giving "significant weight" to others.  ALJ Weiss explained that he gave "significant weight" to Dr. Emery's findings that Plaintiff "would have difficulty learning a less physically dependent means

---

[14] ALJ Weiss's decision also explicitly discussed the "good reasons" for the weight given to Dr. Emery's opinion. *Oldham*, 509 F.3d at 1258.

of earning a living, difficulty learning a livelihood that required regular interpersonal contact, that the [Plaintiff's] memory for simple material was not impaired, that adaptation was moderately impaired, that social functioning was moderately impaired, and that sustained attention and concentration was [sic] moderately impaired, as were pace and persistence" because those limitations *were consistent with Plaintiff's WAIS-IV testing.* AR 176; *contra Haga*, 482 F.3d at 1207 (finding that the ALJ erred because "it [was] *simply unexplained* why the ALJ adopted some of [the consulting doctor's] restrictions but not others" (emphasis added)). In addition, the ALJ gave Dr. Emery's opinion that Plaintiff's understanding was *not* impaired "little weight," because that finding could not reconciled with the doctor's overall opinion. *Id.* Importantly, however, and to resolve Plaintiff's "pick and choose" argument, the ALJ complied with the *Haga* rule by incorporating Dr. Emery's limitations directly into the RFC.

To illustrate, Plaintiff was found to have the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant must avoid climbing of ladders, ropes, and scaffolds, and must avoid more than occasional exposure to unprotected heights, and dangerous moving machinery. *The claimant is able to understand, remember, and carry out simple instructions and make commensurate work related [sic] decisions in a work setting with few changes. He is able to interact occasionally with supervisors, coworkers, and the public. The claimant is able to maintain concentration, persistence, and pace for two hours at a time during the workday with normal breaks.*

AR 174 (emphasis added). This RFC adequately corresponded to Dr. Emery's assessment, which found:

> He will have difficulty learning less physically dependent means of earning a living to compensate for the fatigue he feels because of the diabetes. In addition[,] I see evidence of avoidant personality disorder as a lifetime pattern exacerbated by mild social anxiety. He is likely to also have difficulty in learning a livelihood that *requires regular interpersonal contact.* Memory for simple material is not impaired. *Sustained attention and concentration is moderately impaired as are pace and persistence* (Working Memory and Processing Speed Indexes below other

score).  Understanding is not impaired.  *Social functioning is moderately impaired by avoidant personality traits and social anxiety.*  *General adaptation is moderately impaired.*  I leave it to internal medicine to rate fatigue due to the diabetes but that would be in addition to the impairments I note.  He can handle funds.

AR 441 (emphasis added).

Although Plaintiff contends that the RFC and Dr. Emery's limitations are incompatible and irreconcilable, the Court disagrees.  In the Court's view, the RFC incorporates Dr. Emery's limitations.  To account for Plaintiff's difficulty in "learning a livelihood that requires regular interpersonal contact," ALJ Weiss limited him to occasional contact with supervisors, coworkers, and the public.  To account for Dr. Emery's finding that "sustained attention and concentration is [sic] moderately impaired as are pace and persistence," ALJ Weiss limited Plaintiff's ability to work to "two hours at a time during the workday with normal breaks."  Lastly, to account for moderate "social functioning" and "general adaptation" limitations, ALJ Weiss limited Plaintiff— in addition to the above applicable limitations—"to simple instructions and [to] make commensurate work related [sic] decisions in a work setting with few changes."  Thus, it appears that the RFC on its face—and the ALJ's narrative—account for Dr. Emery's moderate limitations.[15]  *See* AR 175-76 (ALJ explaining how his RFC findings "accommodate[d] the claimant's learning disability" and "accommodate[d] evidence of a mildly dysthymic and anxious mood and the claimant's avoidant personality disorder and anxiety disorder").

There are two additional reasons why the ALJ did not err in his treatment of the moderate limitations identified by Dr. Emery.  First, as noted by the Commissioner's counsel during oral

---

[15] It is worth remembering that an ALJ simply uses a medical opinion as a guide to craft the RFC.  *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (An ALJ does not need to expressly incorporate "moderate limitations in the assessment of residual functional capacity . . . [so long as the ALJ] incorporate[s] the moderate limitations in the course of assessing the claimant's residual functional capacity." (citing *Lee v. Colvin*, 631 Fed. App'x. 538 (10th Cir.2015) (unpublished))).

argument, *see* Tr. 51-52, the ALJ buttressed his treatment of Dr. Emery's opinion by incorporating and discussing the opinions of three other state agency doctors. *See* AR 176-77 (ALJ discussing and giving "significant weight" to the opinions of "Dr. Zuniga, C.W. Kang, M.D.[,] and Joseph Tramontana, Ph.D." whose opinions were consistent with those of Dr. Emery in terms of Plaintiff being capable of performing simple and unskilled work). Second, it is now well-established in the Tenth Circuit that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith*, 821 F.3d at 1269 (citing *Vigil*, 805 F.3d at 1204). That is, an ALJ *can accommodate* for "moderate concentration, persistence, and pace problems in his RFC assessment by limiting [a claimant] to unskilled work." *Vigil*, 805 F.3d at 1204 ("we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace"). Here, the ALJ limited Plaintiff to simple, unskilled work,[16] with the three jobs identified by the vocational expert—and subsequently adopted by ALJ Weiss—having an SVP of two. *See* AR 95-96 (Hearing); 178 (ALJ finding significant number of jobs under framework of section 204.000 in the Medical-Vocational Guidelines).[17]

After reviewing the full record in this case, and in adherence with *Vigil* and its progeny, the Court concludes that the RFC's limitation of Plaintiff to simple and unskilled work more than adequately accounted for the non-exertional limitations identified by Dr. Emery. In so doing, the ALJ recognized Plaintiff's limitations, appropriately allowed for them, and sufficiently explained

---

[16] To be clear, ALJ Weiss's RFC did not explicitly state that Plaintiff was limited to simple work. Rather, the RFC's non-exertional limitations corresponded to the applicable minimum mental requirements for simple, unskilled work.

[17] *See id.* (ALJ hearing transcript) (ALJ: "could such a hypothetical individual perform claimant's past work?" VE: "*No, he could not, it's not simple*, it's semiskilled" ALJ: "Assume a hypothetical individual of claimant's age, education and work experience, could such a hypothetical individual perform other work?" VE: "Yes . . . at the medium, SVP of 2, he could be a hand packer . . . [as a] medium, SVP of 2, he could be a hospital cleaner . . . as a medium SVP of 2, he could be a -- he could be a laundry worker II") (emphasis added).

his reasons for doing so.  The ALJ committed no legal error and crafted an RFC the Court finds to have been supported by substantial evidence.  Nothing more was required.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED WITH PREJUDICE**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*